Jason A. Orr (SBN 301764)
jorr@bakerlaw.com
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 303-861-0600
Facsimile: 303-861-7805

*Attorneys for Defendant*
*AMERIPRISE FINANCIAL, INC.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ERIC YARDLEY, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

AMERIPRISE FINANCIAL, INC.,

Defendant.

Case No. 3:26-cv-03161-BJC-VET

**DEFENDANT AMERIPRISE FINANCIAL, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT**

Date: 9/14/2026
Judge: Hon. Benjamin J. Cheeks
Courtroom: 3A

Action Filed: 5/20/2026

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARDS ........ 3

IV. ARGUMENT ........ 4

A. PLAINTIFF LACKS STANDING. ........ 4

B. PLAINTIFF'S CIPA CLAIM FAILS AS A MATTER OF LAW. ........ 10

1. THE WEBSITE DOES NOT USE A "PEN REGISTER" OR "TRAP AND TRACE DEVICE." ........ 10

2. PLAINTIFF DOES NOT ALLEGE SCIENTER. ........ 13

V. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4

*Aviles v. Liveramp, Inc.*,
No. 24STCV19869, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025) ....................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................4

*Blaker v. NetScout Sys., Inc.*,
25STCV31283, 2026 WL 1709143 (Cal. Super. Ct. May 27, 2026) ....................12, 13

*Bradshaw v. Lowe's Cos., Inc.*,
No. 3:25-cv-00742-DMS-MMP, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ....................6

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ....................3

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....................3

*Crano v. Sojern, Inc.*,
No. 3:25-cv-02600-JSC, 2026 WL 1670136 (N.D. Cal. June 9, 2026) ....................6

*Doe v. Eating Recovery Ctr. LLC*,
No. 3:23-cv-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)...2, 12, 13

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ....................9

*Garcia v. Blackhawk Network, Inc.*,
No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ....................6

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................9

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 8

*Hartley v. Urb. Outfitters, Inc.*,
No. 2:23-cv-04891-CMR, 2024 WL 3445004 (E.D. Pa. July 17, 2024) ........ 10

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 8

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 13, 14

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 8

*Herzman v. Smile Brands, Inc.*,
No. 3:25-cv-03400-H-BLM, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) ........ 6

*Hubbard v. Google LLC*,
No. 5:19-cv-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 9

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ........ 8

*Khamooshi v. Politico LLC*,
No. 3:24-cv-07836-SK, 2025 WL 1408896 (N.D. Cal. May 13, 2025) ........ 8

*Khamooshi v. Politico LLC*,
No. 3:24-cv-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ........ 6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 4

*Kokkonen v. Guardian Life Ins. Co.*,
511 U.S. 375 (1994) ........ 3

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ........ 13

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 9

*Magee v. United States*,
9 F.4th 675 (8th Cir. 2021) .......... 3

*Magliocca v. United Healthcare Servs., Inc.*,
No. 2:25-cv-03388-WBS-SCR, 2026 WL 878694 (E.D. Cal. Mar. 31, 2026) .......... 6

*Morilha v. Alphabet Inc.*,
No. 4:24-cv-02793-JST, 2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) .......... 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... *passim*

*Price v. Converse, Inc.*,
No. 2:24-cv-08091-FLA-E, 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) .......... 6

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .......... 7

*Rodriguez v. Brushfire Records*,
No. 2:25-cv-09797-CAS-PD, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 6

*Rodriguez v. Culligan Int'l Co.*,
No. 3:25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 6

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504, 2024 WL 3886811 (Cal. Super. Ct. July 9, 2024) .......... 4, 5

*Romero v. Securus Techs., Inc.*,
331 F.R.D. 391 (S.D. Cal. 2018) .......... 14

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) .......... 9

*Schallert v. Laird Superfood, Inc.*,
No. 2:25-cv-12407-SPG-PVC, 2026 WL 1707585 (C.D. Cal. June 5, 2026) .......... 6

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 5

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 4

*Straight v. Edfinancial Servs., LLC*,
No. 3:26-cv-01807-JSC, 2026 WL 2087412 (N.D. Cal. July 20, 2026) .......... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 4

*Torres v. Seatgeek, Inc.*,
No. 3:25-cv-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) .......... 7

*Wooten v. BioLife Plasma Servs. L.P.*,
No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .......... 6

**Statutes**

18 U.S.C. § 3123(b) .......... 12

Cal. Penal Code § 20 .......... 14

Cal. Penal Code § 637.2(a) .......... 4

Cal. Penal Code § 638.51(a) .......... 10, 11, 12, 14

Cal. Penal Code § 638.52 .......... 10, 11, 12

California Invasion of Privacy Act .......... *passim*

Electronic Communications Privacy Act .......... 6

Fed. R. Civ. P. 12(b)(1) .......... 3

Fed. R. Civ. P. 12(b)(6) .......... 4

Fed. R. Civ. P. 12(h)(3) .......... 3

Federal Pen Register Act .......... 12

Pennsylvania Wiretapping and Electronic Surveillance Control Act .......... 5

**Other Authorities**

https://www.ameriprise.com .......... 1

**TO THE HONORABLE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on September 14, 2026, or as soon thereafter as the matter may be heard by the above-titled Court located at 221 West Broadway, Third Floor, San Diego, California 92101, Defendant Ameriprise Financial, Inc. ("Ameriprise"), will, and hereby does move the Court to dismiss the above-captioned action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that Plaintiff does not have Article III standing and fails to state a claim against Ameriprise upon which relief can be granted.

Counsel for the Parties have had several discussions and exchanged correspondence regarding Ameriprise's positions in response to the claims alleged in the Complaint. This Motion is made following the conference of counsel that took place on July 29, 2026, where the Parties were unable to reach a resolution that would eliminate the need to file this Motion.

The Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all pleadings, papers, and records filed in this action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

DATED: August 10, 2026

*<u>/s/ Jason A. Orr</u>*
Jason A. Orr
**BAKER & HOSTETLER LLP**

*Attorneys for Defendant*
*AMERIPRISE FINANCIAL, INC.*

# I. INTRODUCTION

Plaintiff Eric Yardley alleges that Ameriprise's use of website "trackers" constitutes an illegal "pen register" or "trap and trace" device under the California Invasion of Privacy Act ("CIPA"). As a growing number of courts have recognized, these technologies are neither pen registers nor trap and trace devices but are lawful and commonplace tools that are used by website operators for basic analytics and marketing purposes. Plaintiff's Complaint should be dismissed.

First, Plaintiff does not adequately allege an injury as required to establish Article III standing or statutory standing under CIPA. The Complaint provides hardly any details about Plaintiff's visit to Ameriprise's website[1] (the "Website")—where he navigated, what pages he viewed, how he interacted with the Website, or what personal information of his was collected during his visit. Plaintiff's general allegations about how the technologies at issue work and how the adtech ecosystem profits from such technology, without more, do not plausibly allege Plaintiff suffered an actionable injury caused by Ameriprise under controlling Ninth Circuit precedents.

Second, Plaintiff does not plead a valid claim under CIPA. The routine data collection that Plaintiff alleges does not amount to a "pen register" or "trap and trace device" as those terms are defined under CIPA. In fact, Plaintiff's application of "pen register" to website cookies directly contradicts CIPA's plain text and legislative history and is expressly rejected by persuasive case law. Plaintiff's strained reading of CIPA would have vast and harmful public policy implications: the very function of the Internet relies on the exchange of information from a web user's browser to a website, and Plaintiff's interpretation of CIPA would make criminal such exchanges that take place billions of times each day. Plaintiff has not adequately alleged a violation of CIPA or the criminal intent required to commit such a violation.

---

[1] https://www.ameriprise.com.

As one federal judge recently put it, "The state of affairs with CIPA is untenable. Courts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability. … It would be bad enough if CIPA were merely a civil statute that allowed plaintiffs to recover actual damages for violations. But CIPA imposes criminal liability and punitive civil penalties. Under these circumstances, it is imperative for the Legislature to bring CIPA into the modern age and to speak clearly about how the kinds of activities at issue in this case should be treated. Until that happens, courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Doe v. Eating Recovery Ctr. LLC*, No. 3:23-cv-05561-VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). Indeed, the Legislature is currently doing just that, finding that "the pen register statute has become a poster child for abusive lawsuits."[2]

This Court should narrowly construe CIPA consistent with the context and purpose of that statute, and hold that CIPA does not apply to the technologies at issue here.

## II. <u>BACKGROUND</u>

Ameriprise's Website, allows customers to learn about Ameriprise's insurance and financial services. Compl. ¶ 3. Plaintiff does not allege when he visited the Website; he only obliquely alleges that "[e]ach time Plaintiff and Class Members visited the site, Defendant utilized various hidden trackers … to collect their routing, addressing and signaling information, in addition to their IP addresses, unique identifiers, browsing information, and other personal information. *Id.* ¶¶ 4, 16. Although the Complaint alleges the Website used "various hidden trackers," Plaintiff only specifically alleges the use of the Meta Pixel. *Id.* ¶ 4.

Plaintiff alleges these website tools (also known as "cookies") are illegal "pen registers" and/or "trap and trace devices" because they instruct browsers to send its IP

---

[2] *See* Request for Judicial Notice ("RJN"), Ex. A, p. 1 (SB 690 Policy Committee Analysis).

address and other device information (such as timestamps, browser actions, and "unique identifiers" such as a cookie ID) to the third parties who developed these tools. *Id.* ¶¶ 4, 17–20. Plaintiff alleges these data are used for analytics, website functions, advertising, and data aggregation. *Id.* ¶¶ 24, 26–27. In other words, Ameriprise uses these "trackers" for legitimate business purposes.

The Complaint contains some general allegations about how website trackers purportedly function, but it is devoid of any specific allegations about this Plaintiff. He does not allege when he visited the Website. He does not allege what actions he took on the website beyond that he "viewed various pages, products and services." *Id.* ¶ 36. He does not specifically allege what "personally identifiable information" was collected during his visit. *Id.* Whatever might have been collected, Plaintiff alleges that Ameriprise and the third parties use this information for "to identify [website visitors] and their Facebook profile," *id.* ¶ 24, but he does not allege that he was de-anonymized through the Meta Pixel at any point or that Ameriprise ever had access to his Facebook profile.

## III. <u>LEGAL STANDARDS</u>

Federal courts must dismiss a case if they determine that subject matter jurisdiction is lacking, which includes cases where the plaintiff lacks Article III standing. Fed. R. Civ. P. 12(b)(1), 12(h)(3); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish Article III standing, Plaintiff must prove that he suffered an "injury in fact," *i.e.*, an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The burden of proving the existence of subject matter jurisdiction rests with the party invoking federal jurisdiction." *Magee v. United States,* 9 F.4th 675, 680 (8th Cir. 2021) (citing *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018)); *see also Chandler*, 598 F.3d 1115, at 1122; *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level" and provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible only if the plaintiff alleges enough facts to support a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Furthermore, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## IV. ARGUMENT

### A. Plaintiff Lacks Standing.

The Complaint contains generalized objections to the adtech economy, but it does not allege *any* facts that constitute an injury-in-fact sufficient to confer standing. Nor does the Complaint allege a cognizable injury under CIPA. CIPA provides a private right of action only to individuals who have been "injured by" a violation of CIPA. Cal. Penal Code § 637.2(a). California courts have interpreted this language to mean that plaintiffs must "allege a concrete injury-in-fact" in order to state a claim under CIPA. *Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal. Super. Ct. July 9, 2024). Plaintiff doesn't even attempt to plead an injury, leaving Ameriprise and this Court guessing as to how Plaintiff believes he was harmed. Plaintiff has not met his burden to show he has standing.

Plaintiff alleges that Ameriprise "violated Plaintiff's and Class Members' privacy rights under CIPA." Compl. ¶ 38. But it is well established that a mere statutory violation is insufficient to confer standing under Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). For an intangible harm (such as a privacy harm) to confer standing, the alleged harm must have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as the reputational harms at stake in a lawsuit for defamation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (discussing *Spokeo*). And for statutory standing under CIPA, the phrase "injured by a violation of this chapter" would have no meaning if the violation was itself the injury. For that reason, courts have required there to be a "concrete injury-in-fact" beyond the statutory violation itself. *See Rodriguez*, 2024 WL 3886811, at *4.

The Ninth Circuit's recent decision in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), is dispositive of the issue of standing. In *Popa*, the plaintiff brought claims under the Pennsylvania Wiretapping and Electronic Surveillance Control Act related to "session reply" technology that allegedly collected many of the same data elements that Plaintiff here alleges is collected by Ameriprise: "the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls." 153 F.4th at 786. The Ninth Circuit held there was no standing based on the plaintiff's failure to allege a cognizable privacy harm, finding that the commercial tracking of website interactions is not even "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," and that monitoring visitor interactions on a company's website "seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales," which is not highly offensive. *Id.* at 791 (affirming motion to dismiss

allegations of privacy violations from visiting a pet supply website, including allegations that plaintiff's street name and pet-store preferences were collected). The Ninth Circuit further held that "[t]o the extent Microsoft's tracking software *could* be offensive in particular circumstances (*e.g.*, involving sensitive medical or financial information), [the plaintiff] d[id] not plausibly allege the infringement of any such privacy interest." *Id.* (emphasis in original).

At least ten federal court decisions have since applied *Popa* to dismiss (often with prejudice) CIPA claims based on the same types of website trackers as here, for lack of standing. *E.g.*, *Straight v. Edfinancial Servs., LLC*, No. 3:26-cv-01807-JSC, 2026 WL 2087412, at *3–4 (N.D. Cal. July 20, 2026); *Schallert v. Laird Superfood, Inc.*, No. 2:25-cv-12407-SPG-PVC, 2026 WL 1707585, at *5–6 (C.D. Cal. June 5, 2026); *Torres v. Seatgeek, Inc.*, No. 3:25-cv-07118-LB, 2026 WL 1495202, at *3 (N.D. Cal. May 28, 2026); *Herzman v. Smile Brands, Inc.*, No. 3:25-cv-03400-H-BLM, 2026 WL 1110698, at *3–4 (S.D. Cal. Apr. 23, 2026); *Rodriguez v. Brushfire Records*, No. 2:25-cv-09797-CAS-PD, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025); *Bradshaw v. Lowe's Cos., Inc.*, No. 3:25-cv-00742-DMS-MMP, 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025); *Rodriguez v. Culligan Int'l Co.*, No. 3:25-cv-00225-AJB-KSC, 2025 WL 3064113, at *3–5 (S.D. Cal. Nov. 3, 2025); *Wooten v. BioLife Plasma Servs. L.P.*, No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619, at *3–4 (E.D. Cal. Oct. 22, 2025); *Khamooshi v. Politico LLC*, No. 3:24-cv-07836-SK, 2025 WL 2822879, at *3–4 (N.D. Cal. Oct. 2, 2025); *Price v. Converse, Inc.*, No. 2:24-cv-08091-FLA-E, 2025 WL 3295119, at *2–3 (C.D. Cal. Sept. 30, 2025); *see also Crano v. Sojern, Inc.*, No. 3:25-cv-02600-JSC, 2026 WL 1670136, at *4–5 (N.D. Cal. June 9, 2026) (relying on *Popa* to find no allegation of injury in connection with ECPA claim); *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028, at *5–6 (C.D. Cal. Apr. 1, 2026) (same); *Magliocca v. United Healthcare Servs., Inc.*, No. 2:25-cv-03388-WBS-SCR, 2026 WL 878694, at *3–4 (E.D. Cal. Mar. 31, 2026) (same). This Court should follow *Popa* and likewise hold that Plaintiff does not have standing.

The Complaint does not contain factual allegations that could give rise to a cognizable privacy injury under common law. As in *Popa*, Plaintiff has not alleged facts that establish a reasonable expectation of privacy in the data his device(s) may have sent to Ameriprise when he visited the Website. As an initial matter, Plaintiff does not identify *any* information of his that Ameriprise or its website "trackers" allegedly collected. This plainly fails to satisfy the *Twombly/Iqbal* standard, which requires Plaintiff to provide *facts* to support his conclusory assertion that he suffered some privacy injury. Plaintiff only gives generic group allegations that include himself and all class members. *See* Compl. ¶¶ 4, 19, 36. Plaintiff does not allege he was identified, targeted, or otherwise personally affected by the alleged tracking. This omission is dispositive. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("[P]laintiffs must … show that they *personally* have been injured." (emphasis added)).

Even if any of his information was collected, "[n]ot all information will qualify [as an injury if disclosed], and the information must be sufficiently personal or sensitive that its disclosure is harmful." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926, n. 5 (C.D. Cal. 2025). As the Ninth Circuit explained in *Popa*, there is no "free-roaming privacy right at common law"—Plaintiff must allege that he experienced a kind of harm that is cognizable in tort, such as "reputational harms, disclosure of private information, and intrusion upon seclusion." 153 F.4th at 792. But there is nothing personal or sensitive about viewing web pages about financial advisors, and Plaintiff experienced no harms even if Meta or anyone knew that he "viewed various pages" on Ameriprise's Website. Plaintiff generally alleges that the Website collects IP address and other device information such as timestamps, browser actions, and "unique identifiers" such as a cookie ID. Compl. ¶¶ 4, 17–20. But courts recognize data such as this is benign: "Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, <u>and a reasonable user should expect as much</u>." *Hubbard v. Google LLC*, No. 5:19-cv-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (emphasis in original) (collecting cases holding that tracking cookies serve

legitimate business purposes and that users do not have reasonable expectations of privacy in the information contained in those files). For this reason, courts routinely dismiss cases involving the same sorts of information at issue here, finding no reasonable expectation of privacy in the information that a plaintiff's device "automatically send[s] … to the website's server as part of the communication process." *Khamooshi v. Politico LLC*, No. 3:24-cv-07836-SK, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) (citing *U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007)); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (no expectation of privacy where third-party trackers collected browser and device data, IP address, and other information); *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 950–51 (S.D. Cal. 2024) (granting motion to dismiss because there is no legally protected privacy interest in the contents of Internet-connected chats with defendant where plaintiff did not allege he shared any sensitive and confidential information and instead vaguely alleged a chat could include private or sensitive information).

Moreover, Plaintiff has not alleged facts that, if true, would show a "serious invasion" of privacy, which typically involves the collection of sensitive, personal, and private facts the disclosure of which is "highly offensive" to a reasonable person. While the "highly offensive" determination is context specific, courts agree that the alleged invasion must be "sufficiently serious and unwarranted as to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295, n. 17 (2009). Plaintiff alleges that Ameriprise "sells financial and insurance services," but he does not allege that he provided any sensitive, personal financial information when he "viewed various pages" on the Website. Compl. ¶¶ 15, 36. What Plaintiff alleges is "routine commercial behavior" that is not even "remotely similar" to a harm protected by common-law privacy torts. *Popa*, 153 F.4th at 792; *see also Morilha v. Alphabet Inc.*, No. 4:24-cv-02793-JST, 2024 WL 5205542, at *4 (N.D. Cal. Dec. 23, 2024) (disclosure of IP addresses and geolocation insufficient to state claim for invasion of privacy); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("[D]ata

collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of users' browsing history not a "serious invasion"); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (collection of browsing histories "[does] not plausibly rise to the level of intrusion necessary to establish an intrusion claim."); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding no egregious breach of social norms in data collection of unique device identifier number, personal data, and geolocation information from plaintiffs' devices, "[e]ven assuming this information was transmitted without Plaintiffs' knowledge and consent").

The data collection practices alleged in the Complaint—even if done for the purpose of advertising—are consistent with commonplace and lawful commercial practices, such as a department store measuring the foot traffic in each department, or a grocery store linking purchase habits to customers' phone numbers. This is not the sort of conduct that has been "actionable under common law," Compl. ¶ 26; *see Popa*, 153 F.4th at 791 (comparing web tracking tools to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales."); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of [Defendant] obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior."). In fact, courts have found no invasion of privacy when far more sensitive data was allegedly collected and disclosed. *See, e.g.*, *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (alleged disclosure of Social Security Numbers "do[es] not constitute an egregious breach" of social norms).

Simply put, Plaintiff's allegations are too sparse, vague, and speculative to establish a violation of a genuine privacy interest. The Complaint simply describes what

"tracking technology" does *in general* without making any connection to Plaintiff in this case and his experience when accessing Ameriprise's Website. What the trackers *may* be capable of collecting does not sufficiently establish what they actually collected from Plaintiff, if anything. *See e.g.*, *Popa*, 153 F.4th at 791 ("To the extent Microsoft's tracking software *could* be offensive in particular circumstances (*e.g.*, involving sensitive medical or financial information), [plaintiff] does not plausibly allege the infringement of any such privacy interest.") (emphasis in original); *Hartley v. Urb. Outfitters, Inc.*, No. 2:23-cv-04891-CMR, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."). Absent a meaningful connection between the trackers and Plaintiff's own information that was allegedly collected, these allegations are conclusory and fail to establish a cognizable privacy injury sufficient to confer standing.

**B. <u>Plaintiff's CIPA Claim Fails as a Matter of Law.</u>**

1. <u>The Website Does Not Use a "Pen Register" or "Trap and Trace Device."</u>

The alleged third-party "tracking" software on the Website does not constitute a "pen register" and/or "trap and trace device" as a matter of law. Plaintiff advances a grossly expanded definition of a "pen register" and "trap and trace device" well beyond their intended use as an investigatory tool for law enforcement by applying it to a ubiquitous Internet technology. Such a claim must fail.

Plaintiff's application of CIPA's pen register or trap-and-trace device provisions to Ameriprise's routine data collection on the Website is irreconcilable with the text and purpose of CIPA. CIPA is a wiretap statute. It precludes "a person … [from] install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). The statutory provisions related to securing such a court order make clear that pen registers and trap-and-trace devices apply only to "telephone lines" and not websites on the Internet. Cal. Penal Code §§ 638.52(a), (d)(1)–(3)

(requiring that a court order "authorizing or approving the installation and use of a pen register" shall specify, *inter alia*, the "identity, if known, of the person to whom is leased or in whose name is listed the ***telephone line*** to which the pen register … is to be attached" and the "***number*** and, if known, physical location of the ***telephone line*** to which the pen register … device is to be attached[.]" (emphases added)). The numerous references to telephones and telephone numbers in Section 638.52 demonstrate that a pen register and/or trap and trace device as used in Section 638.51 apply only to the interception of specific, targeted telephonic communications, and not to IP addresses or other data captured by general website advertising technology. To hold otherwise would lead to absurd results where a party could be held liable for using a pen register or trap and trace device without a court order when an order could never be issued because the technology does not involve a telephone line or number. Because the trackers at issue here do not involve telephonic communications and cannot be connected to a telephone line, a court order could not be obtained, and thus, Section 638.51 does not and cannot apply.

The legislative history of Section 638.51 further confirms that the California Legislature intended the statute to only apply to telephone-tracking technology. The Legislative Counsel's Digest preceding the bill states that A.B. 929 "would clarify that any location information obtained … is limited to the information that can be determined from the telephone number." *See* RJN, Ex. B, p. 1. Given that Sections 638.51 and 638.52 were added to the statute only in 2015, when website tracking tools were already commonplace, and the Legislature still chose to use language expressly about "telephone lines," Plaintiff cannot plausibly argue that the Legislature was unaware of IP addresses or other Internet communications when it passed the amendment.[3] Moreover, Section

[3] The Legislature is currently considering an amendment to CIPA that would eliminate the private right of action for pen register/trap and trace device claims. In a report by the Assembly Committee on Privacy and Consumer Protection, it is noted that Cal. Penal

638.51 took its language directly from the Federal Pen Register Act, except that CIPA *omitted* language that broadened the application of pen registers beyond telephone lines. *Compare* 18 U.S.C. § 3123(b) (court order must specify the "telephone line *or other facility* to which the pen register … is to be attached *or applied*" (emphasis added)); *with* Cal. Penal Code § 638.52 (court order must specify the "telephone line to which the pen register … is to be attached").

A California Superior Court judge recently followed this exact line of reasoning in concluding that CIPA's pen register and trap and trace device sections apply only to telephonic communications and not to website tracking technology. *Blaker v. NetScout Sys., Inc.*, 25STCV31283, 2026 WL 1709143, at *3–4 (Cal. Super. Ct. May 27, 2026). The plaintiff in *Blaker* similarly alleged that website trackers "transformed each page of the Website into a surveillance mechanism that captures visitors' electronic communications without user knowledge or consent." *Id.* at *1. The court sustained the defendant's demurrer without leave to amend, finding that "[t]he use of 'telephone line' in [Section 638.52] explicitly narrows the scope of the definition of 'pen register' or 'trap and trace device' in the context of the statute." *Id.* at *3. "Reading it as a whole, the full statutory scheme appears to demonstrate that the Legislature only intended these provisions to apply to telephonic communications and not to internet websites." *Id.* This Court should adopt the same reasoning and find that Cal. Penal Code Section 638.51 applies only to telephonic communications and not to website cookies.

To the extent this Court finds that CIPA's definition of "pen register" or "trap and trace device" is ambiguous in its statutory context, that ambiguity must be resolved in favor of Ameriprise. The rule of lenity applies even when a criminal statute is being enforced through a civil action. *See Doe*, 2025 WL 2971090, at *6 (citing *Bittner v.*

---

Code section 638.51 was "added in 2015, with little, if any, thought given to its application to online activity and its interaction with CIPA's private right of action." RJN, Ex. A, p. 1.

*United States*, 598 U.S. 85, 103 (2023)). The same rule applies to statutes that impose punitive civil penalties. *See id.* (applying the rule of lenity to adopt a narrow interpretation of CIPA that did not encompass the Meta Pixel). Here, there is a narrower reasonable interpretation of the statutory language that would not encompass website tracking tools. *See Blaker*, 2026 WL 1709143, at *3. Under the rule of lenity, this Court should adopt that narrower reading. Plaintiff's interpretation of CIPA would criminalize commonplace commercial practices in ways the statute does not demand and the Legislature never intended. "[U]sing a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping." *Doe*, 2025 WL 2971090, at *6. California "public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting [to] the website, as a violator." *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024). "Such a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as [to] the precise basis of liability." *Id.* There is a growing number of decisions that decline to extend CIPA in the novel ways that this Plaintiff attempts here. *E.g.*, *Blaker*, 2026 WL 1709143, at *4 ("[T]he Court concludes that this statute applies to telephonic communications and not to software on a commercial website."); *Doe*, 2025 WL 2971090, at *7 ("[C]ourts should not contort themselves to fit the type of conduct alleged in this case into the language of a 1967 criminal statute about wiretapping."); *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *2–3 (Cal. Super. Ct. Jan. 28, 2025) (website beacon was neither a pen register nor a trap-and-trace device). This Court should reject Plaintiff's invitation to read-in to this criminal statute a *de facto* criminalization of the entire Internet.

2. Plaintiff Does Not Allege Scienter.

Because CIPA is a criminal statute, Plaintiff must plead scienter. *See Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA

complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."); *see also* Cal. Penal Code § 20 (scienter); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 402 (S.D. Cal. 2018) (scienter is presumed element of criminal statutes). As such, even if the Website would qualify as a pen register, to be liable under Section 638.51, Plaintiff must allege that Ameriprise implemented entirely lawful, third-party "tracking software" *with knowledge and intent* that the third parties would *illegally* collect information about Plaintiff. *See Heiting*, 709 F. Supp. 3d at 1019. But here, Ameriprise's alleged collection of information was legal, routine commercial behavior similar to all kinds of commonplace practices in today's data-rich business world. *See* Compl. ¶¶ 28–29 (alleging Ameriprise "made the conscious decision" to install the Meta Pixel on the Website in order to accomplish commercial objectives related to marketing and advertising). Ameriprise did not act with a "guilty mind" by collecting and analyzing data sent by Plaintiff's device to the Website. Plaintiff's inability to allege that Ameriprise possessed the requisite scienter is dispositive of this claim, and it must be dismissed.

## V. **CONCLUSION**

For the foregoing reasons, Ameriprise respectfully requests that the Court grant its motion and dismiss the Complaint.

Dated: August 10, 2026

**BAKER & HOSTETLER LLP**

By: */s/ Jason A. Orr*
Jason A. Orr

*Attorneys for Defendant*
AMERIPRISE FINANCIAL, INC.