Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Noah J. Larsh (SBN 348541)
Noah@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
Dan@ShayLegal.com
**SHAY LEGAL, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIC YARDLEY, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIPRISE FINANCIAL, INC.,<br><br>Defendant. | Case No: **3:26-CV-03161-BJC-VET**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>(1) ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA"), 18 U.S.C. § 2511(1), ET SEQ.;<br><br>(2) CALIFORNIA INVASION OF PRIVACY ACT ("CIPA"), CAL. PEN. CODE § 631(A);<br><br>(3) INVASION OF PRIVACY UNDER CALIFORNIA'S CONSTITUTION, ARTICLE I, SECTION 1;<br><br>(4) INTRUSION UPON SECLUSION<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. Plaintiff Eric Yardley ("Plaintiff") brings this First Amended Class Action Complaint on behalf of Plaintiff and all others similarly situated (the "Class Members") against defendant Ameriprise Financial, Inc. ("Defendant") for violations of the Electronic Communications Privacy Act (the federal Wiretap Act), 18 U.S.C. § 2511(1), et seq.; the California Invasion of Privacy Act, Cal. Penal Code § 631(a);[1] the right to privacy guaranteed by Article I, Section 1 of the California Constitution; and the California common law prohibiting intrusion upon seclusion. This action is based upon personal knowledge of the facts pertaining to Plaintiff, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

2. Plaintiff brings this action against Defendant for intercepting, recording, decoding, capturing, disclosing, and using the contents of Plaintiff's and Class Members' electronic communications with Defendant's Website, as well as their routing, addressing, and signaling information, and for aiding Meta Platforms, Inc. ("Meta") to do the same, by means of a tracking pixel (the "Meta Pixel") and related tracking technologies embedded in Defendant's Website.

3. Defendant is not an ordinary retailer. Defendant is one of the largest financial services and insurance companies in the United States, and the Website through which it markets those services is used by consumers to research retirement planning, investment management, annuities, life and disability insurance, and to locate and contact financial advisors. The pages a visitor requests on such a website disclose that visitor's financial circumstances, financial needs, and financial anxieties.

[1] Plaintiff's original Complaint asserted a cause of action for the use of a pen register or trap and trace device in violation of Cal. Penal Code § 638.51. Plaintiff and Class Members abandon that cause of action in light of the impending enactment of Senate Bill 690 (2025–2026 Reg. Sess.), which has passed both houses of the California Legislature and awaits the Governor's signature. As enrolled, SB 690 amends Cal. Penal Code § 637.2 to provide that an action for a violation of § 638.51 arising from conduct occurring on an internet website, online application, or mobile application may be brought only by the Attorney General, and applies retroactively to any pending claim in an action commenced within two years before its operative date — thereby foreclosing the claim previously alleged here. Plaintiff reserves all rights to reassert this cause of action should SB 690 not be enacted, or should its enacted text not foreclose the claim.

4. The Meta Pixel and related technologies did more than capture routing and signaling data. As Plaintiff's own off-Facebook activity confirms, they intercepted the contents of Plaintiff's and Class Members' communications with the Website—including the full URL strings, search queries, and the specific financial products, services, and content they viewed—and transmitted those contents to Meta and other third parties contemporaneously with, and as a duplicate of, the users' communications with Defendant. This interception, disclosure, and use of communication contents, without the consent of Plaintiff and Class Members, violates the federal Wiretap Act, 18 U.S.C. § 2511(1), and CIPA, Cal. Penal Code § 631(a).

5. Defendant's covert interception of these communications, the linking of that information to Plaintiff's and Class Members' real-world identities and Facebook accounts through persistent identifiers, and the disclosure and exploitation of that information for Defendant's and Meta's commercial benefit, also invaded Plaintiff's and Class Members' privacy in violation of Article I, Section 1 of the California Constitution and the California common law prohibiting intrusion upon seclusion.

6. Plaintiff brings this action in order to prevent Defendant from continuing to violate CIPA, and to recover statutory damages for Plaintiff and Class Members.

## PARTIES

7. Plaintiff is a natural person and an adult citizen of the state of California, domiciled in San Diego County, California.

8. Defendant is a corporation formed in Delaware with its principal place of business in Minnesota. Defendant owns and operates the Website that is the subject of this litigation.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 2511(1), et seq., and pursuant to 28 U.S.C. § 1367 over the supplemental state law claims. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action in which (1)

the aggregate claims of all members of the proposed Class exceed $5,000,000 exclusive of interest and costs, and (2) at least one Class Member is a citizen of a state different from Defendant.

10. This Court has personal jurisdiction over Defendant because Defendant is a corporation that gathers, takes, uses, and shares the information of Californians, including Plaintiff and Class Members. The events and conduct giving rise to Plaintiff's claims occurred in California, within this judicial district. The violations complained of herein resulted from Defendant's purposeful and tortious acts directed towards citizens of California, such as Plaintiff, while they were located in California, within this judicial district.

11. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and (ii) Defendant conducted business within this judicial district at all times relevant.

## COMMON FACTUAL ALLEGATIONS

### A. Defendant's Website and the Sensitive Nature of Its Subject Matter

12. Defendant owns and operates the website https://www.ameriprise.com (the "Website"), through which consumers in California and elsewhere research and obtain financial and insurance services, including retirement planning, investment and wealth management, annuities, and life, disability, and long-term care insurance.

13. The Website is organized around the visitor's own financial situation. Its pages are segmented by financial need and life stage, and it invites visitors to identify their retirement posture, their assets and income, their insurance gaps, and their financial goals in order to be matched with products and with individual financial advisors.

14. A visitor's path through the Website therefore does not merely reveal that the visitor was browsing a commercial website. It reveals what that visitor was worried about financially: whether the visitor is preparing for retirement or already retired, whether the visitor is seeking to insure against death or disability, whether the

visitor believes he or she has saved too little, and whether the visitor is seeking professional help managing money. This is sensitive financial information.

15. Although the Website presents itself as a provider of financial and insurance services, Defendant also deals in data, which has become an increasingly valuable commodity. To collect that data, Defendant deployed tracking technologies on the Website, including a tracking pixel made available by Meta Platforms, Inc. ("Meta") (the "Meta Pixel").

16. These tracking technologies are embedded in the source code of the Website and are designed to capture, record, and transmit information associated with each visitor's communications with the Website at the moment of interaction. They track visitors and their interactions—including the pages they visit, the links they click, the products and services they search for and view, their location, and various identifying information—and they aid third parties such as Meta to do the same.

**B. Plaintiff's Use of the Website**

17. Plaintiff visited and used the Website on or about February 26, 2026. Plaintiff visited the Website while physically located in San Diego County, California.

18. Plaintiff visited the Website for his own personal purposes, namely to research and evaluate financial and investment services and products offer by Defendant. Plaintiff was a prospective customer of Defendant.

19. The full URL strings of the pages Plaintiff requested included, but are not limited to, **https://www.ameriprise.com/**. Defendant installed a Meta Pixel with the ID ending in 85240 on this page. Those URL strings themselves disclosed the substance of what Plaintiff was requesting, reading, and viewing.

20. The information described above is not information that Plaintiff's device transmitted automatically and unavoidably as a technical necessity of connecting to a web server. It is information reflecting Plaintiff's own deliberate choices about what to read, what to search for, and what to disclose about his financial circumstances, and it was generated by Plaintiff's affirmative interactions with the Website.

///

///

**C. Plaintiff Was Identified Through These Communications with the Website**

21. When Plaintiff and Class Members visited the Website, the Meta Pixel installed a "_fbp" cookie on their computers, creating a unique browser identifier for each visitor. When those visitors logged into Facebook from the same browser, Meta paired the "_fbp" cookie with each visitor's Facebook account using the "c_user" cookie that Meta had placed on their computers, and Defendant transmitted to Meta an "external_id" advanced-matching parameter, enabling Defendant and Meta to identify the visitor in the real world.

22. Plaintiff was in fact identified. Plaintiff maintains a Facebook account. As a result, the contents of Plaintiff's communications with the Website were linked to Plaintiff by name through his Facebook account. Plaintiff's off-Facebook activity records his interactions with the Website under his own Facebook identity whereby Plaintiff could be targeted for specific advertising.

23. Plaintiff was therefore not an anonymous visitor whose general page views were counted in the aggregate. Plaintiff was de-anonymized. Defendant's deployment of the Meta Pixel with advanced matching enabled caused Plaintiff's identity to be joined to a record of the sensitive financial subject matter he had been researching, and that joined record was delivered to a third party for that third party's own commercial exploitation.

24. Plaintiff confirmed this conduct by downloading Plaintiff's "off-Facebook activity" ("OFBA") from Facebook. The OFBA reveals that Defendant systematically transmitted to Meta the details of Plaintiff's interactions with the Website, including unique identifiers associated with Plaintiff, timestamps, and descriptions of specific interactions such as "Search" and "Page View."

25. A forensic review, including analysis of HTTP Archive ("HAR") data from the Website, confirms that in a single session the Website caused hundreds of

GET requests to be transmitted, disseminating the contents of communications and routing, addressing, and signaling information within seconds not only to Meta but also to other third parties.

**D. The Communications and The Contents**

26. Each time Plaintiff and Class Members navigated, searched, browsed, and interacted with the Website, they transmitted electronic communications to, and exchanged electronic communications with, Defendant's servers. These communications were transfers of signs, signals, writing, images, data, and intelligence transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce.

27. These communications contained their contents, that is, information concerning the substance, purport, and meaning of the communications, including the search terms Plaintiff and Class Members entered, the specific financial products, services, and pages they requested and viewed, the contents of those requests, and the responses they received.

28. By means of the Meta Pixel and related tracking code embedded in the Website, Defendant intercepted the contents of these communications, and not merely record information. The intercepted contents included the full Uniform Resource Locator ("URL") strings of the pages Plaintiff and Class Members requested, the search queries they entered (transmitted to Meta as "Search" events), and the specific financial products and content they viewed (transmitted as "Page View" events.

29. These URL strings, search queries, and event data reveal the substance, purport, and meaning of what Plaintiff and Class Members communicated to the Website—what they searched for, what financial concerns they were investigating, and what they viewed and did—and are therefore contents, not mere addressing or routing information that identifies only a general webpage address or basic subscriber data.

30. The interception occurred while the communications were in transit. The Meta Pixel's code executed within Plaintiff's and Class Members' browsers and transmitted the contents of their communications to Meta and other third parties at the moment of, or simultaneously with, the user's interaction with the Website, and before or contemporaneously with the communications being received by Defendant.

31. The Meta Pixel, the associated tracking code and cookies (including the "_fbp" cookie), Plaintiff's and Class Members' browsers and computing devices, and Defendant's and Meta's web servers each functioned as a device used to intercept the contents of an electronic communication.

32. Meta is a third party to the communications between Plaintiff and Class Members, on the one hand, and Defendant, on the other. Meta is a separate legal entity that offers software-as-a-service and is not a mere passive recording device; Meta has the independent capability and intent to use the intercepted contents for its own commercial purposes, including building user profiles and serving targeted advertising.

33. This interception occurred in California, where Plaintiff and Class Members were located when they communicated with the Website.

**E. Defendant Acted Knowingly and Intentionally**

34. Defendant's interception was intentional and knowing. The Meta Pixel does not appear on a website by accident. Defendant made the conscious decision to install the Meta Pixel by obtaining the pixel code from Meta and adding that code to the source code of the Website, and did so for the purpose of capturing, transmitting, and exploiting the contents of its users' communications.

35. Defendant went further than a default installation. Defendant configured the Meta Pixel to fire on specific visitor events, including "Search" and "Page View" events, and thereby selected the categories of visitor conduct it wished to capture and transmit. Each such configuration was an affirmative choice made by Defendant.

36. Defendant also enabled Meta's advanced matching functionality and transmitted an "external_id" parameter to Meta. Advanced matching is not enabled by default; it must be deliberately turned on and configured. Its sole purpose is to increase the rate at which website visitors are matched to identified Facebook accounts. By enabling it, Defendant acted with the specific purpose of causing its visitors to be identified rather than remain anonymous.

37. Defendant knew, from Meta's own publicly available documentation, exactly what the Meta Pixel would do. According to Meta, the Meta Pixel allows Meta to match a website's visitors to their respective Facebook accounts and to tally their actions for advertising and optimization purposes. Defendant adopted the Meta Pixel because of that capability, not in ignorance of it.

38. Defendant knew that the subject matter of its Website was sensitive financial information. Defendant is a regulated financial services company that holds itself out as a fiduciary steward of its customers' financial lives and that maintains privacy policies and data-handling obligations concerning consumer financial information. Defendant nonetheless configured its Website to route the contents of its visitors' financial research to a third-party advertising company.

39. Defendant did not disclose to Plaintiff or Class Members, in any manner reasonably calculated to reach them before or during their use of the Website, that the contents of their communications would be intercepted and transmitted to Meta and other third parties, or that their identities would be joined to those contents.

40. Neither Plaintiff nor Class Members consented to the interception, disclosure, or use of the contents of their communications, or to the transmission of those contents to Meta and other third parties. Plaintiff and Class Members were unaware that Defendant had installed the Meta Pixel or that the contents of their communications were being routed to third parties.

41. Defendant carried out this interception for the purpose of committing independent criminal and tortious acts—including invasion of privacy, intrusion upon

seclusion, and violations of the California Invasion of Privacy Act—by surreptitiously surveilling Plaintiff's and Class Members' communications, aggregating their contents with persistent identifiers tying the data to their real-world identities and Facebook accounts, and disclosing and exploiting that information for Defendant's and Meta's commercial benefit. That Defendant also acted for commercial gain does not change this purpose, because committing a tort and seeking a profit are not mutually exclusive.

**F. Plaintiff's Privacy Interests and Injury**

42. Plaintiff and Class Members possess a legally protected privacy interest in the contents of their communications with the Website and in their personal information, including the search queries they entered, the specific financial products and content they viewed, their research into their own financial and insurance circumstances, and the persistent identifiers that link that activity to their identities.

43. Plaintiff and Class Members had a reasonable expectation of privacy in this information under the circumstances. A consumer who visits the website of a financial services company to research retirement, investments, and insurance does not expect that a record of that research, joined to his real name, will be delivered to an advertising company. That expectation is reinforced by the regulatory and social norms governing the handling of consumer financial information.

44. The information at issue here is materially different from the information at issue in cases involving general retail browsing. This case does not concern the observation of anonymous foot traffic or the tallying of popular pages. It concerns the capture of an identified consumer's research into his own financial condition and needs, and the delivery of that research to a third party that profits from it.

45. Defendant's covert collection of this information, the linking of it to Plaintiff's and Class Members' real-world identities and Facebook accounts, and the disclosure and exploitation of it for Defendant's and Meta's commercial benefit, constitute a serious invasion of privacy that is highly offensive to a reasonable person,

given the sensitivity of the information, the identification of the individual, and the secret manner of collection.

46. Plaintiff and Class Members had an objectively reasonable expectation that their communications and activity on the Website would remain private and would not be surreptitiously intercepted by, and disclosed to, a third party such as Meta.

47. Defendant intentionally intruded upon that seclusion by deploying the Meta Pixel and related technologies to surveil, capture, and transmit the contents of Plaintiff's and Class Members' communications to Meta and other third parties, without notice to or consent from Plaintiff and Class Members.

48. As a direct and proximate result of Defendant's conduct, Plaintiff suffered concrete injury. Plaintiff lost the right to control the dissemination and use of the contents of his own communications and of sensitive information about his financial circumstances. Plaintiff's sensitive financial research was disclosed to a third party, joined to his identity, and used to build a commercial profile of him without his knowledge.

49. These injuries bear a close relationship to harms long recognized as actionable at common law, including intrusion upon seclusion and the public disclosure of private facts.

50. The data Defendant is known to have intercepted, recorded, decoded, and captured, and aided Meta and others to obtain, represents only a portion of the information actually collected, as demonstrated by the limited disclosures available through Meta's OFBA. The full scope of Defendant's conduct is broader and will be the subject of further investigation and discovery.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action pursuant to Rule 23 of the Federal Rule of Civil Procedure, on behalf of a class defined as;

"All persons who, while physically located in California, used

> the Website during the period beginning May 20, 2023 through the date of judgment, and whose electronic communications or personal information were transmitted to a third party, including Meta, by means of the Meta Pixel or other tracking technology installed on the Website. (the "Class")

52. Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

53. Excluded from the Class are Defendant, any affiliate, parent, or subsidiary of Defendant, any entity in which Defendant has a controlling interest, any officer, director, or employee of Defendant, any successor or assign of Defendant, anyone employed by counsel in this action, any judge to whom this case is assigned, his/her spouse and immediate family members, and members of the judge's staff.

54. **<u>Numerosity</u>**. The Class is so numerous that joinder of all members is impracticable. The exact number of Class Members is presently unknown but is estimated to be many thousands of individuals, the identities of whom are readily ascertainable from Defendant's records reflecting the period during which the Meta Pixel was installed and active on the Website, together with the records of Meta and the other third parties to which Plaintiff's and Class Members' communications and information were transmitted.

55. **<u>Typicality</u>**. Plaintiff's claims are typical of the claims of the Class. Like all Class Members, Plaintiff visited and communicated with the Website, and Defendant intercepted, disclosed, and used the contents of Plaintiff's communications, as well as Plaintiff's routing, addressing, and signaling information, and aided Meta to do the same, by means of the same Meta Pixel and tracking technologies and the same uniform course of conduct. Plaintiff's claims arise from the same conduct and are based on the same legal theories as the claims of the other Class Members under each of the causes of action alleged.

56. **<u>Adequacy</u>**. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class. Plaintiff has retained counsel experienced in the prosecution of class action litigation generally and in digital privacy litigation specifically, and Plaintiff and counsel are committed to prosecuting this action vigorously on behalf of the Class.

57. **<u>Commonality and Predominance</u>**. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Classes include:

a. Whether Defendant installed and used the Meta Pixel and related tracking technologies on the Website, and aided Meta and other third parties to receive data therefrom;

b. Whether the communications between Class Members and the Website contained "contents" within the meaning of the federal Wiretap Act and the California Invasion of Privacy Act;

c. Whether, by means of the Meta Pixel, Defendant intentionally intercepted, used, or disclosed the contents of Class Members' electronic communications while in transit, and procured Meta and other third parties to do so, in violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) (Count I);

d. Whether Defendant intercepted those communications for the purpose of committing a criminal or tortious act, such that the party exception of 18 U.S.C. § 2511(2)(d) does not apply (Count I);

e. Whether Defendant, by means of the Meta Pixel, read, learned, attempted to read or learn, or aided Meta to read or learn, the contents of Class Members' communications while in transit and without the consent of all parties, and used the information so obtained, in violation of CIPA, Cal.

Penal Code § 631(a) (Count II);

f. Whether Defendant's conduct violated Class Members' right to privacy under Article I, Section 1 of the California Constitution (Count III);

g. Whether Defendant intentionally intruded upon Class Members' seclusion in a manner highly offensive to a reasonable person under California common law (Count IV);

h. Whether Class Members had a reasonable expectation of privacy in the contents of their communications and in their personal information;

i. Whether Defendant obtained the consent of Class Members to the conduct alleged; and

j. Whether Plaintiff and Class Members are entitled to statutory damages, punitive damages, restitution, injunctive and declaratory relief, and reasonable attorneys' fees and costs.

58. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment permits a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. Because the recovery available to any individual Class Member is small relative to the burden and expense of individual litigation, it would be impracticable for Class Members to seek redress individually, and the class mechanism provides the only realistic means of redress.

59. **Ascertainability and Manageability**. The Class is readily ascertainable through objective criteria, using Defendant's records reflecting when the Meta Pixel was installed and active on the Website and the records of Meta and other third parties identifying the persons whose communications and information were transmitted to them. The uniformity of Defendant's conduct, the consistency of the governing legal standards, and the ascertainability of Class Members demonstrate that this action presents no significant manageability problems.

## CLAIM FOR RELIEF

### Count I – Violation of the Electronic Communications Privacy Act 18 U.S.C. § 2511(1), et seq.

60. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

61. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

62. The Electronic Communications Privacy Act, also known as the federal Wiretap Act ("ECPA"), 18 U.S.C. § 2510, et seq., prohibits the intentional interception, use, and disclosure of wire, oral, and electronic communications.

63. Section 2511(1)(a) imposes liability on any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

64. Section 2511(1)(c) imposes liability on any person who "intentionally discloses, or endeavors to disclose, to any other person the contents of any … electronic communication, knowing or having reason to know that the information was obtained through the interception of a … electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(c).

65. Section 2511(1)(d) imposes liability on any person who "intentionally uses, or endeavors to use, the contents of any … electronic communication, knowing or having reason to know that the information was obtained through the interception of a … electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(d).

66. Section 2520(a) confers a private right of action upon "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter," and authorizes recovery of statutory and actual damages, punitive damages, reasonable attorneys' fees, and equitable and declaratory relief. 18 U.S.C. § 2520.

67. The communications at issue are "electronic communications" within

the meaning of 18 U.S.C. § 2510(12), in that they constitute transfers of signs, signals, writing, images, data, and intelligence transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce.

68. When Plaintiff and Class Members navigated, searched, browsed, and interacted with the Website, they transmitted electronic communications to and exchanged electronic communications with Defendant's servers, including the search terms they entered, the specific financial products and pages they requested and viewed, the contents of those requests, and the resulting responses.

69. The ECPA protects the "contents" of an electronic communication, which "includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

70. Defendant, by means of the Meta Pixel and other tracking technologies embedded in the source code of its Website, intercepted the contents of Plaintiff's and Class Members' electronic communications, and not merely record information. The intercepted contents included the full URL strings of the pages Plaintiff and Class Members requested, the search queries they entered (transmitted to Meta as "Search" events), and the specific financial products and pages they viewed (transmitted as "Page View" events).

71. These URL strings, search queries, and event data are "contents" because they reveal the substance, purport, and meaning of what Plaintiff and Class Members communicated to the Website—namely, what they searched for, what financial concerns they were investigating, and what they viewed and did—rather than mere addressing or routing information that identifies only a general webpage address or basic subscriber information.

72. Plaintiff's own OFBA data, downloaded from Facebook, confirms that Defendant transmitted to Meta the contents of Plaintiff's communications with the Website, including identifiers tied to Plaintiff, timestamps, and descriptions of specific

interactions such as "Search" and "Page View."

73. Defendant intentionally intercepted, endeavored to intercept, and procured Meta and other third parties to intercept the contents of these electronic communications. The Meta Pixel and associated tracking code caused Plaintiff's and Class Members' browsers to transmit the contents of their communications with the Website to Meta and other third parties contemporaneously with, and as a duplicate of, the communications directed to Defendant.

74. The interception occurred while the communications were in transit, as alleged above.

75. The Meta Pixel, the associated tracking code and cookies (including the "_fbp" cookie), Plaintiff's and Class Members' browsers and computing devices, and Defendant's and Meta's web servers each constitute a "device" within the meaning of 18 U.S.C. § 2510(5) that was used to intercept the contents of an electronic communication.

76. Defendant's interceptions were intentional, as alleged above, including Defendant's deliberate installation of the pixel code, its configuration of specific event triggers, and its affirmative enablement of advanced matching for the purpose of identifying its visitors.

77. Defendant intentionally disclosed, and endeavored to disclose, the contents of Plaintiff's and Class Members' electronic communications to Meta and other third parties, knowing or having reason to know that those contents were obtained through the interception of electronic communications, in violation of 18 U.S.C. § 2511(1)(c).

78. Defendant intentionally used, and endeavored to use, the contents of Plaintiff's and Class Members' electronic communications, knowing or having reason to know that those contents were obtained through the interception of electronic communications, in violation of 18 U.S.C. § 2511(1)(d).

79. Neither Plaintiff nor Class Members consented to Defendant's

interception, disclosure, or use of the contents of their electronic communications, or to the transmission of those contents to Meta and other third parties.

80. To the extent Defendant contends it was a party to the communications under 18 U.S.C. § 2511(2)(d), the party exception does not apply. Defendant intercepted, disclosed, and used the contents of Plaintiff's and Class Members' communications for the purpose of committing criminal and tortious acts in violation of the Constitution and laws of the United States and of the State of California.

81. The party exception in 18 U.S.C. § 2511(2)(d) does not permit a party that intercepts, or causes the interception of, a communication to escape liability where the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

82. A determining factor in, and the purpose of, Defendant's interception, disclosure, and use of the contents of Plaintiff's and Class Members' communications was to commit the following independent criminal and tortious acts: (a) violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a); (b) invasion of privacy under Article I, Section 1 of the California Constitution; and (c) intrusion upon seclusion under California common law—each as alleged in the counts that follow and incorporated herein.

83. Independent of the act of interception, Defendant's purpose was to invade the privacy of Plaintiff and Class Members by surreptitiously surveilling their communications, aggregating the contents of those communications with persistent identifiers tying the data to their real-world identities and Facebook accounts, and disclosing and exploiting that information for Defendant's and Meta's commercial benefit—conduct that would be highly offensive to a reasonable person.

84. The seizure and use of the contents of Plaintiff's and Class Members' electronic communications, combined with unique and persistent identifiers (including the "_fbp" and "c_user" cookies and the "external_id" advanced matching parameter), enabled Defendant and Meta to identify Plaintiff and Class Members and to build

detailed profiles of them, intruding upon a zone of privacy in which Plaintiff and Class Members had a reasonable expectation of privacy.

85. That Defendant also acted for commercial gain does not defeat the crime-tort exception, because committing a tort and seeking a profit are not mutually exclusive, and Plaintiff has alleged that Defendant's conduct violated independent state common law and statutory privacy protections.

86. As a direct and proximate result of Defendant's violations of the ECPA, Plaintiff and Class Members have suffered injury, including the violation of their statutorily protected privacy interests, the loss of the right to control the dissemination and use of the contents of their communications, the disclosure of sensitive financial information to a third party in a form linked to their identities, and the loss of the value of their private information.

87. Pursuant to 18 U.S.C. § 2520, Plaintiff and Class Members are entitled to recover from Defendant the greater of actual damages or statutory damages, punitive damages, reasonable attorneys' fees and litigation costs, and such preliminary, equitable, and declaratory relief as may be appropriate to enjoin Defendant's continued violations of the ECPA.

**Count II – Violation of the California Invasion of Privacy Act**

**Cal. Penal Code § 631(a)**

88. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

89. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

90. California Penal Code § 631(a) imposes liability on any person who, "by means of any machine, instrument, or contrivance, or in any other manner," (i) intentionally taps or makes any unauthorized connection with any telegraph or telephone wire, line, cable, or instrument; (ii) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read,

or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state"; (iii) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; or (iv) aids, agrees with, employs, or conspires with any person to do any of the foregoing.

91. Section 631(a) is not limited to telephone or telegraph lines and applies to electronic and internet communications.

92. The Meta Pixel and associated tracking code are a "machine, instrument, contrivance, or … other manner" used to engage in the conduct prohibited by Section 631(a).

93. As alleged above, the communications Plaintiff and Class Members exchanged with the Website included the contents of those communications, namely their full URL strings, search queries, and the specific financial products, services, and content they viewed and acted upon.

94. Meta is a third party to the communications between Plaintiff and Class Members, on the one hand, and Defendant, on the other. Meta is a separate legal entity that offers software-as-a-service and is not a mere passive recording device; Meta has the independent capability and intent to use the intercepted contents for its own commercial purposes, including building user profiles and serving targeted advertising.

95. By means of the Meta Pixel, Defendant willfully and without the consent of all parties to the communication, and in an unauthorized manner, read, attempted to read, and learned the contents or meaning of Plaintiff's and Class Members' communications with the Website while those communications were in transit or being sent from or received within California.

96. By means of the Meta Pixel, Defendant aided, agreed with, employed, or conspired with Meta and other third parties to read, attempt to read, and learn the contents or meaning of Plaintiff's and Class Members' communications with the Website while those communications were in transit, in violation of Section 631(a).

97. Defendant used, and attempted to use, the contents of the communications so obtained for its own purposes, including marketing, advertising optimization, and data aggregation, in violation of Section 631(a).

98. Defendant acted willfully. As alleged above, Defendant deliberately installed the pixel code on its Website, configured the events on which the pixel would fire, and affirmatively enabled advanced matching so that its visitors would be identified.

99. Neither Plaintiff nor Class Members consented to Defendant's or Meta's reading, learning, use, or interception of the contents of their communications.

100. The interception occurred in California, where Plaintiff and Class Members were located when they communicated with the Website.

101. Plaintiff and Class Members have been injured by Defendant's violations of Section 631(a), as alleged above. Cal. Penal Code § 637.2(c) further provides that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

102. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members each seek statutory damages of $5,000 for each violation, together with injunctive relief to stop the violations alleged herein.

**Count III – Invasion of Privacy**

**California Constitution Article 1, Section 1**

103. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

104. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

105. Article I, Section 1 of the California Constitution provides that all people have an inalienable right to privacy.

106. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a

reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that constitutes a serious invasion of that privacy interest.

107. Plaintiff and Class Members possess a legally protected privacy interest in the contents of their electronic communications with the Website and in their personal information, including the search queries they entered, the specific financial products and content they viewed, and their research into their own financial circumstances, together with the persistent identifiers that link that activity to their identities.

108. Plaintiff and Class Members had a reasonable expectation of privacy in these communications and information, as alleged above.

109. Defendant's conduct constitutes a serious invasion of privacy that is highly offensive to a reasonable person, given the sensitivity of the financial information collected, the covert manner of collection, the disclosure of that information to Meta and other third parties, and the use of persistent identifiers to compile detailed profiles of Plaintiff and Class Members for commercial gain.

110. Plaintiff and Class Members did not consent to Defendant's invasion of their privacy.

111. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered injury to their privacy interests and are entitled to compensatory and punitive damages and to injunctive and declaratory relief.

**Count IV – Intrusion Upon Seclusion**

**California Common Law**

112. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

113. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

114. To establish a claim for intrusion upon seclusion under California common law, a plaintiff must show (1) the defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff had a reasonable expectation of privacy;

and (2) the intrusion occurred in a manner highly offensive to a reasonable person.

115. Plaintiff and Class Members had an objectively reasonable expectation of privacy in the contents of their communications with the Website and in their research into their own financial and insurance circumstances, including the expectation that such communications would not be surreptitiously intercepted by and disclosed to a third party such as Meta.

116. Defendant intentionally intruded upon that seclusion by deploying the Meta Pixel and associated tracking technologies to surveil, capture, and transmit the contents of Plaintiff's and Class Members' communications to Meta and other third parties, without notice to or consent from Plaintiff and Class Members.

117. Defendant's intrusion was highly offensive to a reasonable person, given the sensitivity of the financial information intercepted, the secrecy of the collection, the linking of that information to Plaintiff's and Class Members' real-world identities through persistent identifiers, and the exploitation of that information for Defendant's and Meta's commercial benefit.

118. Plaintiff and Class Members did not consent to Defendant's intrusion.

119. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered injury to their privacy interests and are entitled to compensatory and punitive damages and to injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks:

a. An order certifying the Class, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

b. An order declaring that Defendant's conduct violated the statutes and laws referenced herein;

c. An order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. An award of statutory damages;

e. An award of actual and compensatory damages;

f. An award of punitive damages in an amount to be determined at trial;

g. Prejudgment interest on all amounts awarded;

h. Injunctive relief as pleaded or as the Court may deem proper;

i. An award of reasonable attorneys' fees and expenses and costs of suit;

j. Any other relief the Court deems reasonable and just.

## **JURY TRIAL DEMANDED**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff and Class Members are entitled to, and demand, a trial by jury.

Respectfully submitted,

Date: August 31, 2026

**SWIGART LAW GROUP, APC**
By: *s/ Joshua Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com

Date: August 31, 2026

**SHAY LEGAL, APC**
By: *s/ Daniel Shay*
Daniel G. Shay, Esq.
Dan@ShayLegal.com

*Attorneys for Plaintiff and the Putative Class*