Jason A. Orr (SBN 301764)
jorr@bakerlaw.com
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 303-861-0600
Facsimile: 303-861-7805

*Attorneys for Defendant*
*AMERIPRISE FINANCIAL, INC.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ERIC YARDLEY, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

AMERIPRISE FINANCIAL, INC.,

Defendant.

Case No. 3:26-cv-03161-BJC-VET

**DEFENDANT AMERIPRISE FINANCIAL, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT**

Date: 10/19/2026
Judge: Hon. Benjamin J. Cheeks
Courtroom: 3A

Action Filed: 5/20/2026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... III

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARDS ..... 3

IV. ARGUMENT ..... 4

A. PLAINTIFF LACKS STANDING ..... 4

B. PLAINTIFF'S WIRETAPPING CLAIMS FAIL AS A MATTER OF LAW ..... 10

**1. PLAINTIFF'S ECPA CLAIM IS BARRED BY THE PARTY EXCEPTION** ..... 11

**2. PLAINTIFF FAILS TO ALLEGE A SEPARATE DISCLOSURE** ..... 12

**3. PLAINTIFF FAILS TO ALLEGE CONTEMPORANEOUS INTERCEPTION** ..... 12

**4. PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE INTERCEPTION OF "CONTENTS"** ..... 13

**5. PLAINTIFF FAILS TO ALLEGE SCIENTER** ..... 15

C. PLAINTIFF'S INVASION OF PRIVACY CLAIMS FAIL AS A MATTER OF LAW ..... 15

V. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) .... 4

*Bradshaw v. Lowe's Cos., Inc.*, No. 3:25-cv-00742-DMS-MMP, 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025) .... 6

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) .... 3

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) .... 3

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) .... 18

*Crano v. Sojern, Inc.*, No. 3:25-cv-02600-JSC, 2026 WL 1670136, at *4–5 (N.D. Cal. June 9, 2026) . 6

*Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 465 (9th Cir. 1997) .... 16

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) .... 17

*Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) .... 18

*Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930–31 (N.D. Cal. 2015) .... 14

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) .... 9

*Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028, at *5–6 (C.D. Cal. Apr. 1, 2026) .... 6

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) .... 9, 17

*Hartley v. Urb. Outfitters, Inc.*, No. 2:23-cv-04891-CMR, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024) .... 10

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) .... 8

*Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) .... 15

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) .... 16

*Herzman v. Smile Brands, Inc.*, No. 3:25-cv-03400-H-BLM, 2026 WL 1110698, at *3–4 (S.D. Cal. Apr. 23, 2026) .... 6

*Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994) .... 16

*Hubbard v. Google LLC*, No. 5:19-cv-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) .... 8, 17

*In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) .... 8

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) .............................. 9, 17

*In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016)...................................... 14

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038 ......................................................................... 17

*In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) ................................................ 14

*Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 950–51 (S.D. Cal. 2024)............................... 8

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) ................................... 11

*Khamooshi v. Politico LLC*, No. 3:24-cv-07836-SK, 2025 WL 2822879, at *3–4 (N.D. Cal. Oct. 2, 2025)............................................................................................................................ 6, 8

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)............................................ 4

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) ........................................................... 4

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 & n. 6 (9th Cir. 2002)...................................... 13

*Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025)........................................... 11, 12

*Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084–85 (C.D. Cal. 2023) ....................... 13

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)..................................... 8, 16, 17

*Magee v. United States,* 9 F.4th 675, 680 (8th Cir. 2021).................................................................... 3

*Magliocca v. United Healthcare Servs., Inc.*, No. 2:25-cv-03388-WBS-SCR, 2026 WL 878694, at *3–4 (E.D. Cal. Mar. 31, 2026)................................................................................................. 6

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) ................................................ 13

*Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024).................................. 14

*Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012)................... 13

*Morilha v. Alphabet Inc.*, No. 4:24-cv-02793-JST, 2024 WL 5205542, at *4 (N.D. Cal. Dec. 23, 2024) ..................................................................................................................................... 9, 18

*NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951–52 (N.D. Cal. 2014) ...................... 13

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025)............................................... 5, 7, 8, 9, 10, 18

*Price v. Converse, Inc.*, No. 2:24-cv-08091-FLA-E, 2025 WL 3295119, at *2–3 (C.D. Cal. Sept. 30, 2025)................................................................................................................................ 6

*Rand v. Eyemart Express, LLC*, No. 3:24-cv-621, 2025 WL 1519726, at *5 (N.D. Tex. May 27, 2025) ........................................................................................................................................ 12

*Recoop LLC v. Outliers Inc.*, No. 24-cv-01810, 2025 WL 1104910, at *8 (S.D.N.Y. Apr. 14, 2025). 13

*Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926, n. 5 (C.D. Cal. 2025) ........................... 7

*Rodriguez v. Brushfire Records*, No. 2:25-cv-09797-CAS-PD, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) ........ 6

*Rodriguez v. Culligan Int'l Co.*, No. 3:25-cv-00225-AJB-KSC, 2025 WL 3064113, at *3–5 (S.D. Cal. Nov. 3, 2025) ........ 6

*Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal. Super. Ct. July 9, 2024) ........ 4

*Rodriguez v. Google LLC*, 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022) ........ 13

*Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 402 (S.D. Cal. 2018) ........ 15

*Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ........ 9

*Salah v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) ........ 14

*Schallert v. Laird Superfood, Inc.*, No. 2:25-cv-12407-SPG-PVC, 2026 WL 1707585, at *5–6 (C.D. Cal. June 5, 2026) ........ 6

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) ........ 17

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ........ 4

*Straight v. Edfinancial Servs., LLC*, No. 3:26-cv-01807-JSC, 2026 WL 2087412, at *3–4 (N.D. Cal. July 20, 2026) ........ 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ........ 4

*Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025) ........ 16

*Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 16

*Torres v. Prudential Fin., Inc.*, No. 22-cv-07465, 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025) ........ 13

*Torres v. Seatgeek, Inc.*, No. 3:25-cv-07118-LB, 2026 WL 1495202, at *3 (N.D. Cal. May 28, 2026) 6

*Wooten v. BioLife Plasma Servs. L.P.*, No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619, at *3–4 (E.D. Cal. Oct. 22, 2025) ........ 6

## Statutes

18 U.S.C. § 2510(8) ........ 14

18 U.S.C. § 2511(1)(c) ........ 12

18 U.S.C. § 2511(2)(d) ........ 11

Cal. Penal Code § 20 ........ 15

Cal. Penal Code § 637.2(a) ........ 4

**Rules**

Fed. R. Civ. P. 12(b)(1) ........ 3

Fed. R. Civ. P. 12(h)(3) ........ 3

**TO THE HONORABLE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on October 19, 2026, or as soon thereafter as the matter may be heard by the above-titled Court located at 221 West Broadway, Third Floor, San Diego, California 92101, Defendant Ameriprise Financial, Inc. ("Ameriprise"), will, and hereby does move the Court to dismiss the above-captioned action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that Plaintiff does not have Article III standing and fails to state a claim against Ameriprise upon which relief can be granted.

Counsel for the Parties have had several discussions and exchanged correspondence regarding Ameriprise's positions in response to the claims alleged in the First Amended Complaint (the "Complaint" or "FAC"). This Motion is made following the conference of counsel that took place on September 10, 2026, where the Parties were unable to reach a resolution that would eliminate the need to file this Motion.

The Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all pleadings, papers, and records filed in this action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

DATED: September 14, 2026

*<u>/s/ Jason A. Orr</u>*
Jason A. Orr
**BAKER & HOSTETLER LLP**

*Attorneys for Defendant*
*AMERIPRISE FINANCIAL, INC.*

# I. INTRODUCTION

It is impossible to understand this case outside of the context in which the original complaint was brought and later amended. Plaintiff initially brought one cause of action under the California Invasion of Privacy Act ("CIPA"), and in particular the pen register section of CIPA that the California Legislature recently found "has become a poster child for abusive lawsuits."[1] In August 2026, the Legislature amended CIPA to eliminate the private right of action for claims under that pen register section.[2] Days after that amendment, Plaintiff Eric Yardley amended his complaint to dispense with the pen register cause of action, substituting instead (1) a cause of action under CIPA's eavesdropping/wiretapping sections, (2) a federal wiretapping claim under the Electronic Communications Privacy Act (ECPA), (3) an invasion of privacy claim brought under the California Constitution, and (4) a common law claim for intrusion upon seclusion. In short, this case represents Plaintiff's attempt to salvage claims the Legislature found abusive, by pivoting to other statutes and legal theories that are no more meritorious than the original ones.

First, Plaintiff does not adequately allege an injury as required to establish Article III standing or statutory standing under CIPA. The Complaint provides hardly any details about Plaintiff's visit to Ameriprise's website[3] (the "Website")—rather, Plaintiff vaguely alleges that his interactions with the Website somehow constitute a communication to Ameriprise about his financial circumstances or interests. This is not enough to allege an actionable privacy injury under controlling Ninth Circuit precedents.

Second, Plaintiff does not plead a valid wiretapping claim under either CIPA or the ECPA. The ECPA is a one-party consent statute, and Ameriprise is undisputedly a

---

[1] *See* Request for Judicial Notice ("RJN"), Ex. A, p. 1 (SB 690 Policy Committee Analysis).

[2] See RJN, Ex. B (SB 690 final text).

[3] https://www.ameriprise.com.

party to whatever "communications" Plaintiff alleges he had with the Website. Moreover, Plaintiff's amended Complaint does not allege facts establishing (1) that either Ameriprise or Meta "intercepted" information from Plaintiff's devices, (2) that the information collected through browser cookies constituted a "communication," or (3) that Ameriprise "disclosed" the contents of these allegedly intercepted communications to Meta. Separately, Plaintiff has not adequately alleged the criminal intent that is required for a violation of CIPA.

Plaintiff's invasion of privacy claims fail for the same reason that Plaintiff has failed to establish standing. He does not allege facts that, if true, would show an egregious breach of social norms. The Complaint does not describe what personal information of his was disclosed through the tracking technologies he alleges were on the Website. This alone is fatal to the causes of action because Plaintiff has failed to allege what sensitive information was communicated such that its disclosure would harm him. At most, Plaintiff alleges that Meta may have learned that he visited pages on the Website that generally describe financial services related to retirement, or investments, or insurance. That is not an egregious breach of social norms as a matter of law.

Because Plaintiff has already had one chance to reinvent his case through amendment, this Court should dismiss the Complaint with prejudice.

## II. BACKGROUND

Ameriprise's Website allows customers to learn about Ameriprise's insurance and financial services. FAC ¶¶ 12, 15. Plaintiff alleges that beyond its financial and insurance services, Ameriprise "deals in data" in that it "deployed tracking technologies on the Website." *Id.* ¶ 15. The only such technology that Plaintiff identifies is the Meta Pixel, though he alleges there are other "third parties" tracking his information. *See id.*

Plaintiff alleges these website tools (also known as "cookies") "are designed to capture, record, and transmit information associated with each visitor's communications with the Website." *Id.* ¶ 16. Specifically, the cookies transmit information about "the

pages [Website visitors] visit, the links they click, the products and services they search for and view, their location, and various identifying information." *Id.*

Plaintiff alleges he visited the Website "on or about February 26, 2026." *Id.* ¶ 17. He alleges he visited the site "to research and evaluate financial and investment services and products offer[ed] by Ameriprise." *Id.* ¶ 18. Although the Complaint is unclear, it seems to allege that when Plaintiff visited the Website, the cookies installed on his browser transmitted data to Meta, including "full URL strings" Plaintiff contends "disclosed the substance of what Plaintiff was requesting, reading, and viewing." *Id.* ¶ 19. More broadly, Plaintiff contends the information collected through these "tracking technologies" included "information reflecting Plaintiff's own deliberate choices about what to read, what to search for, and what to disclose about his financial circumstances." *Id.* ¶ 20.

## III. LEGAL STANDARDS

Federal courts must dismiss a case if they determine that subject matter jurisdiction is lacking, which includes cases where the plaintiff lacks Article III standing. Fed. R. Civ. P. 12(b)(1), 12(h)(3); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish Article III standing, Plaintiff must prove that he suffered an "injury in fact," *i.e.*, an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The burden of proving the existence of subject matter jurisdiction rests with the party invoking federal jurisdiction." *Magee v. United States,* 9 F.4th 675, 680 (8th Cir. 2021) (citing *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018)); *see also Chandler*, 598 F.3d 1115, at 1122; *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level" and provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible only if the plaintiff alleges enough facts to support a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Furthermore, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## IV. <u>ARGUMENT</u>

### A. <u>Plaintiff Lacks Standing.</u>

The Complaint is replete with vague speculations about imagined privacy violations, but it does not allege *any* specific facts about Plaintiff that constitute an injury-in-fact sufficient to confer standing. Nor does the Complaint allege a cognizable injury under CIPA. CIPA provides a private right of action <u>only</u> to individuals who have been "injured by" a violation of CIPA. Cal. Penal Code § 637.2(a). California courts have interpreted this language to mean that plaintiffs must "allege a concrete injury-in-fact" in order to state a claim under CIPA. *Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 3886811, at *4 (Cal. Super. Ct. July 9, 2024).

Plaintiff alleges that he "possess[es] a legally protected privacy interest in the contents of [his] communications with the Website and in [his] personal information, including the search queries [he] entered, the specific financial products and content [he] viewed, their research into [his] own financial and insurance circumstances, and the persistent identifiers that link that activity to [his] identit[y]." FAC ¶ 42.

The Ninth Circuit's recent decision in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), sets the standard for pleading standing when the only alleged injury is an intangible privacy harm. In *Popa*, the plaintiff brought claims under the Pennsylvania Wiretapping and Electronic Surveillance Control Act related to "session reply" technology that allegedly collected many of the same data elements that Plaintiff here alleges is collected by Ameriprise: "the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls." 153 F.4th at 786. The Ninth Circuit held there was no standing based on the plaintiff's failure to allege a cognizable privacy harm, finding that the commercial tracking of website interactions is not even "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," and that monitoring visitor interactions on a company's website "seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales," which is not highly offensive. *Id.* at 791 (affirming motion to dismiss allegations of privacy violations from visiting a pet supply website, including allegations that plaintiff's street name and pet-store preferences were collected). The Ninth Circuit further held "[t]o the extent Microsoft's tracking software *could* be offensive in particular circumstances (*e.g.*, involving sensitive medical or financial information), [the plaintiff] d[id] not plausibly allege the infringement of any such privacy interest." *Id.* (emphasis in original).

At least ten federal court decisions have since applied *Popa* to dismiss (often with prejudice) CIPA claims based on the same types of website trackers as here, for lack of standing. *E.g.*, *Straight v. Edfinancial Servs., LLC*, No. 3:26-cv-01807-JSC, 2026 WL 2087412, at *3–4 (N.D. Cal. July 20, 2026); *Schallert v. Laird Superfood, Inc.*, No. 2:25-cv-12407-SPG-PVC, 2026 WL 1707585, at *5–6 (C.D. Cal. June 5, 2026); *Torres v.*

*Seatgeek, Inc.*, No. 3:25-cv-07118-LB, 2026 WL 1495202, at *3 (N.D. Cal. May 28, 2026); *Herzman v. Smile Brands, Inc.*, No. 3:25-cv-03400-H-BLM, 2026 WL 1110698, at *3–4 (S.D. Cal. Apr. 23, 2026); *Rodriguez v. Brushfire Records*, No. 2:25-cv-09797-CAS-PD, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025); *Bradshaw v. Lowe's Cos., Inc.*, No. 3:25-cv-00742-DMS-MMP, 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025); *Rodriguez v. Culligan Int'l Co.*, No. 3:25-cv-00225-AJB-KSC, 2025 WL 3064113, at *3–5 (S.D. Cal. Nov. 3, 2025); *Wooten v. BioLife Plasma Servs. L.P.*, No. 1:25-cv-00099-KES-SKO, 2025 WL 2979619, at *3–4 (E.D. Cal. Oct. 22, 2025); *Khamooshi v. Politico LLC*, No. 3:24-cv-07836-SK, 2025 WL 2822879, at *3–4 (N.D. Cal. Oct. 2, 2025); *Price v. Converse, Inc.*, No. 2:24-cv-08091-FLA-E, 2025 WL 3295119, at *2–3 (C.D. Cal. Sept. 30, 2025); *see also Crano v. Sojern, Inc.*, No. 3:25-cv-02600-JSC, 2026 WL 1670136, at *4–5 (N.D. Cal. June 9, 2026) (relying on *Popa* to find no allegation of injury in connection with ECPA claim); *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028, at *5–6 (C.D. Cal. Apr. 1, 2026) (same); *Magliocca v. United Healthcare Servs., Inc.*, No. 2:25-cv-03388-WBS-SCR, 2026 WL 878694, at *3–4 (E.D. Cal. Mar. 31, 2026) (same). This Court should follow the logic and reasoning of *Popa* and likewise hold Plaintiff does not have standing.

The Complaint does not contain factual allegations that could give rise to a cognizable privacy injury under common law. The only facts concerning injury that specifically pertain to Plaintiff are that (1) he visited the Website, and (2) Meta may have received the URL address of the pages on the Website he allegedly visited. *See* FAC ¶¶ 17–19. Everything beyond those facts is pure speculation, conjecture, and an implausible characterization of Plaintiff's own allegations about how the tracking technologies function. Plaintiff asserts that these URLs "disclosed the substance of what Plaintiff was requesting, reading, and viewing." *Id.* ¶ 19. The only URL that Plaintiff alleges he visited is https://www.ameriprise.com, the general landing page for the Website. This page lists only general information and links to other pages such as "Retirement" or "Mutual Funds." *See, e.g.*, Ameriprise, *Retirement*,

https://www.ameriprise.com/financial-goals-priorities/retirement (last accessed Sept. 10, 2026); Ameriprise, *Mutual funds*, https://www.ameriprise.com/products/investments/mutual-funds (last accessed Sept. 10, 2026).[4] Even assuming that someone would only access the page "Retirement" because he is interested in or planning for retirement, the URL for this page does not disclose information about a person that is anything like the "highly offensive" disclosure that is necessary to support standing on the basis of an alleged privacy injury. *See Popa*, 153 F.4th at 791. "Not all information will qualify [as an injury if disclosed], and the information must be sufficiently personal or sensitive that its disclosure is harmful." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926, n. 5 (C.D. Cal. 2025).

As the Ninth Circuit explained in *Popa*, there is no "free-roaming privacy right at common law"—Plaintiff must allege that he experienced a kind of harm that is cognizable in tort, such as "reputational harms, disclosure of private information, and intrusion upon seclusion." 153 F.4th at 792. But there is nothing personal or sensitive about viewing web pages about financial advisors, and furthermore Plaintiff does not allege what specific pages he visited, does not list the URLs of those pages, and does not explain how the URLs disclosed anything about what Plaintiff read, or what "sensitive financial research" he performed, or what his "financial circumstances" might be. *See* FAC ¶ 48. Without specific allegations that could substantiate a privacy injury analogous to those actionable at common law, Plaintiff has failed to establish standing. *See Popa*, 153 F.4th at 791; *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of users' browsing history not a "serious invasion"); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (collection of browsing histories "[does] not plausibly rise to the level of intrusion necessary to establish an intrusion claim.").

---

[4] The Website is incorporated by reference in the Complaint. *See* FAC ¶ 19.

Apart from the URLs, Plaintiff alleges the cookies transmit "the links [visitors] click, the products and services they search for and view, their location, and various identifying information." FAC ¶ 16. But courts recognize data such as this is benign: "Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, <u>and a reasonable user should expect as much</u>." *Hubbard v. Google LLC*, No. 5:19-cv-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (emphasis in original) (collecting cases holding that tracking cookies serve legitimate business purposes and that users do not have reasonable expectations of privacy in the information contained in those files). For this reason, courts routinely dismiss cases involving the same sorts of information at issue here, finding no reasonable expectation of privacy in the information that a plaintiff's device "automatically send[s] … to the website's server as part of the communication process." *Khamooshi v. Politico LLC*, No. 3:24-cv-07836-SK, 2025 WL 1408896, at *3 (N.D. Cal. May 13, 2025) (citing *U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007)); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (no expectation of privacy where third-party trackers collected browser and device data, IP address, and other information); *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 950–51 (S.D. Cal. 2024) (granting motion to dismiss because there is no legally protected privacy interest in the contents of Internet-connected chats with defendant where plaintiff did not allege he shared any sensitive and confidential information and instead vaguely alleged a chat could include private or sensitive information); *see also Morilha v. Alphabet Inc.*, No. 4:24-cv-02793-JST, 2024 WL 5205542, at *4 (N.D. Cal. Dec. 23, 2024) (disclosure of IP addresses and geolocation insufficient to state claim for invasion of privacy); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("[D]ata collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy."); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding no egregious breach of social norms in data collection of unique device identifier number,

personal data, and geolocation information from plaintiffs' devices, "[e]ven assuming this information was transmitted without Plaintiffs' knowledge and consent").

The data collection practices alleged in the Complaint—even if done for the purpose of advertising—are consistent with commonplace and lawful commercial practices, such as a department store measuring the foot traffic in each department, or a grocery store linking purchase habits to customers' phone numbers. This is not the sort of conduct that has been "actionable under common law," FAC ¶ 49; *see Popa*, 153 F.4th at 791 (comparing web tracking tools to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales."); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of [Defendant] obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior."). In fact, courts have found no invasion of privacy when far more sensitive data was allegedly collected and disclosed. *See, e.g.*, *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (alleged disclosure of Social Security Numbers "do[es] not constitute an egregious breach" of social norms).

Simply put, Plaintiff's allegations are too sparse, vague, and speculative to establish a violation of a genuine privacy interest. The Complaint simply describes what "tracking technology" does *in general* and merely presumes that because Ameriprise is a financial services company, Plaintiff's visit to the Website must have disclosed something about his finances. What the trackers *may or may not* be capable of collecting does not sufficiently establish what they *actually* collected from Plaintiff, *if anything*. *See e.g.*, *Popa*, 153 F.4th at 791 ("To the extent Microsoft's tracking software *could* be offensive in particular circumstances (*e.g.*, involving sensitive medical or financial information), [plaintiff] does not plausibly allege the infringement of any such privacy interest.") (emphasis in original); *Hartley v. Urb. Outfitters, Inc.*, No. 2:23-cv-04891-

CMR, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."). Absent a meaningful connection between the trackers and Plaintiff's own information that was allegedly collected, these allegations are conclusory and fail to establish a cognizable privacy injury sufficient to confer standing.

### B. Plaintiff's Wiretapping Claims Fail as a Matter of Law.

CIPA and the ECPA are both anti-wiretapping statutes. The ECPA provides for a private right of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of" the Act. FAC ¶ 66 (quoting 18 U.S.C. § 2520(a)). Plaintiff's ECPA count alleges that Ameriprise violated the ECPA in three ways: first by "intercepting" Plaintiff's communications to the Website, second by "disclos[ing] … the contents of Plaintiff's … electronic communications to Meta," and third by "us[ing] … the contents of Plainitff's … communications." FAC ¶¶ 73–78.

Similarly, CIPA provides a private right of action where a person "by means of any machine, instrument, or contrivance, or in any other manner," (i) intentionally taps or makes any unauthorized connection with any telegraph or telephone wire, line, cable, or instrument; (ii) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state"; (iii) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; or (iv) aids, agrees with, employs, or conspires with any person to do any of the foregoing. Cal. Penal Code § 631(a). Plaintiff alleges that Ameriprise violated CIPA by "read[ing] … the contents or meaning of Plaintiff's … communications with the Website," or by aiding or conspiring with Meta to do the same. FAC ¶¶ 95–96.

These claims all fail because the ECPA expressly exempts parties to the allegedly intercepted communications and because Plaintiff identifies no post-interception disclosure separate from the same transmission that allegedly allowed Meta to receive data in the first place. Moreover, Plaintiff does not allege nonconclusory facts that show an actual interception of the contents of a communication in the first instance.

**1. Plaintiff's ECPA Claim is Barred by the Party Exception**

The law is clear that a party cannot wiretap itself by "intercepting" communications directed to it. The ECPA does not make it unlawful for someone to "intercept ... [an] electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d). Here, the Complaint alleges Ameriprise intercepted "communications with the Website," that is, "communications with Defendant." FAC ¶¶ 4, 73. Ameriprise therefore was a party to the alleged communications and cannot be liable under the ECPA unless Plaintiff plausibly pled Ameriprise intercepted those communications for the purpose of committing a crime or tort. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (dismissing ECPA claim where defendant was a party to the communication); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (same).

He does not. While Plaintiff attempts to invoke the "crime-tort exception," FAC ¶ 80–84, Plaintiff alleges no facts suggesting that that the "primary motivation" or even a "determining factor" in Ameriprise's use of website cookies was to violate Plaintiff's privacy, as would be required for the crime-tort exception to apply. *Lakes*, 777 F. Supp. 3d at 1057. Instead, Plaintiff alleges that Ameriprise used these technologies for "marketing, advertising optimization, and data aggregation," which are all legitimate and commonplace business purposes. FAC ¶ 97. In similar cases, courts have held that the party exception applies and dismissed similar ECPA claims based on website tracking technology. *See, e.g.*, *Lakes*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (party exception applied where purpose of tracking was "not to perpetuate torts on millions of Internet users, but to make money"); *Rand v. Eyemart Express, LLC*, No. 3:24-cv-621,

2025 WL 1519726, at *5 (N.D. Tex. May 27, 2025) (where "plaintiffs have failed to plead facts to plausibly establish that any PHI was shared with Meta [in violation of HIPAA] … the crime-tort exception does not apply").

**2. Plaintiff Fails to Allege a Separate Disclosure**

Plaintiff likewise does not allege a plausible basis for Ameriprise's liability for disclosing their communications to Meta in violation of Section 2511(1)(c) of the ECPA because Plaintiff does not allege any actionable disclosure. Apart from mere conclusory allegations Ameriprise "disclosed" communications to Meta and other unnamed third parties, the Complaint makes clear that the technologies at issue result in no transmission of communications from Ameriprise to Meta. Rather, Plaintiffs allege the "Meta Pixel's code executed within Plaintiff's and Class Members' browsers and transmitted the contents of their communications to Meta and other third parties." FAC ¶ 30. That is, the Website sets cookies on browsers, and where those cookies are not rejected or blocked, they result in a direct transmission from the browser to Meta (or other third parties). The Complaint does not allege any facts showing a separate disclosure of Plaintiff's communications by Ameriprise and therefore fails as a matter of law.

**3. Plaintiff Fails to Allege Contemporaneous Interception**

Plaintiff also fails to establish any underlying unlawful interception from Meta, in part because Plaintiffs fail to allege contemporaneous interception of the alleged content "in transit," as required by the ECPA or CIPA. The term "intercept" is construed narrowly such that the communication "must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 & n. 6 (9th Cir. 2002). A claim fails where there is "no evidence" that "the information collected by … [a third party] [was] intercepted contemporaneously with transmission." *Recoop LLC v. Outliers Inc.*, No. 24-cv-01810, 2025 WL 1104910, at *8 (S.D.N.Y. Apr. 14, 2025). Where plaintiffs allege a third party "simultaneously intercepts their data in transit" but "[t]he mechanism by which it does so… is unclear," plaintiffs fail to "describe[] how [that third party] actually intercepts data in real time." *Rodriguez v.*

*Google LLC*, 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022). Given the speed of internet communications, the ECPA's application to such transmissions is "undoubtedly limited" and rarely met. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951–52 (N.D. Cal. 2014); *see also Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084–85 (C.D. Cal. 2023); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465, 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025). Plaintiff alleges no facts to suggest that Meta or anyone else intercepted communications before they reached Ameriprise. Because the Complaint does not allege facts showing a contemporaneous acquisition of communications in transit, this element of the ECPA claim is independently deficient.

**4. Plaintiff Fails to Allege a Plausible Interception of "Contents"**

Plaintiff likewise fails to establish an underlying interception for their ECPA and CIPA claims because they do not plead Meta intercepted "contents" within the meaning of the statutes. Under the ECPA, "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "Content" information "refers to the intended message conveyed by the communication" and is therefore distinct from "record" information, which relates to "the characteristics of the message that is generated in the course of the communication," such as a name, address, or the identity of a subscriber or customer. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014); *see also Salah v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) (similar standard for CIPA). Here, the alleged "contents" at issue are the URLs of the "the pages [Website visitors] visit, the links they click, the products and services they search for and view, their location, and various identifying information." FAC ¶ 16.

In *Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930–31 (N.D. Cal. 2015), the court held that a URL sent to Meta by a user's browser does not qualify as "contents" of a "communication" under the ECPA because it is "record information

regarding the characteristics of the message that is generated in the course of the communication." *Id.* at 935 (quoting *In re Zynga*, 750 F.3d at 1106–07). By definition, a URL does not convey the "meaning" of the communication with the host server; it simply identifies the location of the requested webpage on the Internet. *Id.* at 935–36. Likewise, in *In re Zynga*, the Ninth Circuit explained that even though a URL could disclose that a person viewed the "page of a gay support group," such URLs function like an "address," not the "contents" of a communication. 750 F.3d at 1107–08; *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (URL that revealed which specific video a child watched was more like a telephone number than a substantive conversation); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling … key presses, page navigation" were "more akin to the 'record' information that the Ninth Circuit held not to be contents").

Here, it is telling that the original Complaint characterized the exact same information at issue as such "record information" that admittedly is "not the contents of a communication." Compl. ¶ 40 (ECF 1); *id.* ¶ 18 (alleging collection of "full URL strings, page paths, and other signaling information"). The current operative Complaint calls the same data "the contents of communications" but does not provide any facts about what those contents are apart from the URLs indicating what Website pages Plaintiff visited. Plaintiff does not allege that he used the Website to communicate with a financial advisor or that he input any personal financial information into the Website. Instead, Plaintiff attempts to blur the line between online browsing information and "contents" by suggesting that Plaintiff's interactions with the Website somehow communicate something about his financial position or interests, *see, e.g.*, FAC ¶ 20, while failing to plead the substantive contents of any of his "communications" with Ameriprise. As such, Plaintiff has not alleged sufficient facts to state any violation of the ECPA or CIPA.

### 5. Plaintiff Fails to Allege Scienter

Because CIPA is a criminal statute, Plaintiff must plead scienter. *See Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."); *see also* Cal. Penal Code § 20 (scienter); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 402 (S.D. Cal. 2018) (scienter is presumed element of criminal statutes). As such, even if the Website would qualify as a pen register, to be liable under Section 638.51, Plaintiff must allege that Ameriprise implemented entirely lawful, third-party "tracking software" *with knowledge and intent* that the third parties would *illegally* collect information about Plaintiff. *See Heiting*, 709 F. Supp. 3d at 1019. But here, Ameriprise's alleged collection of information was legal, routine commercial behavior similar to all kinds of commonplace practices in today's data-rich business world. *See* Compl. ¶ 97 (alleging Ameriprise used the tracking technologies "for its own purposes, including marketing, advertising optimization, and data aggregation"). Ameriprise did not act with a "guilty mind" by collecting and analyzing data sent by Plaintiff's device to the Website, and Plaintiff's conclusory allegations concerning criminal purposes are not sufficient to establish the requisite scienter. For this reason alone, Plaintiff's CIPA claim must be dismissed.

## C. <u>Plaintiff's Invasion of Privacy Claims Fail as a Matter of Law.</u>

The California Constitution sets a "high bar" to state a claim for an invasion of privacy. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Such a claim requires: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). The elements for common law intrusion upon seclusion are (1) an intentional intrusion, physical or otherwise, "upon the solitude or seclusion of another," (2) in a manner "highly offensive to a reasonable person." *Deteresa v. Am. Broad.*

*Companies, Inc.*, 121 F.3d 460, 465 (9th Cir. 1997) (quoting *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1986)).

Under either standard, "[a]ctionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an *egregious breach of the social norms* underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37 (1994) (emphasis added). "Generally, the internet is not a place where users have a reasonable expectation of privacy." *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd sub nom. Thomas v. Papa John's Int'l, Inc.*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025). For this reason, courts frequently recognize the type of routine data collection alleged here as benign: "Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, *and a reasonable user should expect as much*." *Hubbard*, 2024 WL 3302066, at *7 (collecting cases holding that tracking cookies serve legitimate business purposes and that users do not have reasonable expectations of privacy in the information contained in those files).

In the internet context, plaintiffs must allege exactly "what specific, personal or private information they conveyed" to the website. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023). Plaintiff's vague and generalized allegations about data collection and disclosure to third parties that is "routine commercial behavior" does not meet this "high" bar. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (finding no egregious breach even "assuming [the] information was transmitted without Plaintiffs' knowledge and consent") (emphasis added). "Even disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038; *see also Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (employment information, bank account information, and their eligibility for preapproval or approval for a credit card was not an egregious breach "[r]egardless of whether Plaintiffs possessed a legally protected privacy interest or

maintained a reasonable expectation of privacy"); *Low*, 900 F. Supp. 2d at 1025 (personal information such as social security numbers); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (unique device identifier number, personal data, and geolocation information).

Here, Plaintiff generally alleges that Meta and other third parties collected information about "the pages [he] visit[ed], the links [he] click[ed], the products and services [he] search[ed] for and view[ed], [his] location, and various identifying information," FAC ¶ 16, but as noted above, none of this information implicates a legally cognizable privacy interest. Plaintiff also fails to allege any specific information of his that was actually collected and transmitted, let alone information that could be sensitive (like personal financial information). *See* FAC ¶¶ 7–29. Nor could he: the Website presents articles of general interest that describe what services Ameriprise offers. *See* Ameriprise, https://www.ameriprise.com (last accessed Sept. 10, 2026). Even assuming the pages Plaintiff visited correspond in some way to Plaintiff's interest in seeking particular financial or insurance services, whatever information could have been communicated through the URLs of these Website pages is far from a "serious breach of … social norms." *Popa*, 153 F.4th at 791 (finding no offensive information in routine, non-sensitive website interactions).

For this reason, courts regularly find that the routine collection of information, such as browsing history, device ID, personal data, and even geolocation information, is not a "highly offensive" invasion of privacy. *See Morilha v. Alphabet Inc.*, No. 24-cv-0279-JST, 2024 WL 5205542, at *4 (N.D. Cal. Dec. 23, 2024) (disclosure of IP addresses and geolocation insufficient to state claim for invasion of privacy); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (capture of "personal details," IP address, and browsing history not highly offensive); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) ("[D]isclosing a user's browsing history does not plausibly reach the level of 'highly offensive' conduct."). Because Plaintiff alleges the collection

of these same types of information, *see, e.g.*, FAC ¶ 16 (URLs, page clicks, geolocation), his invasion of privacy claims should be dismissed with prejudice.

## V. **CONCLUSION**

For the foregoing reasons, Ameriprise respectfully requests that the Court grant its motion and dismiss the Complaint with prejudice.

Dated: September 14, 2026

**BAKER & HOSTETLER LLP**

By: */s/ Jason A. Orr*
Jason A. Orr

*Attorneys for Defendant*
AMERIPRISE FINANCIAL, INC.